## THE HAGAN.

### HAGAN S. S. CO. v. GULF REFINING CO.
### No. 4832.

Circuit Court of Appeals, Third Circuit.
July 20, 1932.

Francis S. Laws, of Philadelphia, Pa., for appellant.

James L. Gillingham, of New York City, for appellee.

Before BUFFINGTON, WOOLLEY, and THOMPSON, Circuit Judges.

THOMPSON, Circuit Judge.

This is an appeal from a final decree in admiralty dismissing a libel against the Gulf Refining Company, the impleaded respondent. The proceedings began with a libel by the Atlantic Refining Company, as sole owner of four fire-fighting tugs, against the steamer Hagan and the Hagan Steamship Company to recover for salvage services rendered by the tugs and their respective masters and crews in extinguishing a fire upon the Hagan while that steamer was discharging cargo at the wharf of the Gulf Refining Company under the terms of a charter party. The respondent filed a petition, under Admiralty Rule 56 (28 USCA § 723), impleading the Gulf Refining Company. The District Court made an award to the Atlantic Refining Company for salvage services and dismissed the libel against the Gulf Refining Company.

This appeal is restricted to the question of the liability of the Gulf Refining Company.

The respondent contends that the salvage services, for which the award was made to the Atlantic Refining Company, were made necessary because of the negligence of the Gulf Refining Company in giving the Hagan a foul berth, which caused her to be aground and placed her in a position rendering salvage services necessary. It is contended that this was a breach of the terms of the charter party undertaking to keep the Hagan afloat. The charter party contained the following clause: "* * * And being so loaded shall therewith proceed (as ordered on signing of bills of lading), direct to one safe U. S. port north of Hatteras not north nor east of New York or as near thereunto as she may safely get (always afloat) and deliver the same," etc.

The burden of proving that the Hagan was aground and that this was due to fault upon the part of the Gulf Refining Company in failing to provide the Hagan with a safe berth and to keep her afloat was upon the respondent. The very basis of its case is that the Hagan was aground. A most careful study of the testimony has not convinced us that such was the case.

The Hagan arrived at the Gulf Refining Company's wharf at about 3:30 in the afternoon of March 19, 1930, and was moored with her bow up-stream and her starboard side to the shore. Shortly after 8 o'clock in the evening, the tide then being ebb, a fire broke out upon the wharf in a shed or warehouse which contained drums filled with aviation gasoline. The Hagan, loaded with a cargo of oil, was endangered. The master of the Hagan ordered that all the mooring lines be cut. Apparently this was done to all but the stern line. The evidence clearly shows, however, that, in the haste of abandoning the vessel, no responsible officer remained on board long enough to see that the stern line was cut. When the fire was observed and before it reached the Hagan, two tugs, the Pennsylvania Railroad tug No. 4 and the Cramp, came to the Hagan's assistance and made an unsuccessful attempt to pull her away from the wharf; the No. 4 going to the stern and the Cramp to the bow. A seven-inch line was passed to the Cramp and an eight-inch line to the No. 4. The line made fast to the No. 4 parted. The master, officers, and crew of the Hagan, with the exception of the second officer, engineer, and the firemen, were then, at their request, taken off the ship. The engineer had steam up, anticipating an order

from the master to attempt to take the Hagan from the wharf under her own power, but no such order was given and no effort was made at any time to do so. When the fire reached the Hagan, the fire-fighting tugs of the Atlantic Refining Company succeeded in extinguishing the flames, but not until considerable damage had been done to the Hagan. Their services were meritorious and without doubt saved the Hagan from destruction.

While the tide was still at low ebb and after the fire had been extinguished, the Hagan's bow swung from the shore with the tide. The tugs pushed the bow back. Disinterested witnesses testified that they then saw that the Hagan's stern line was still fast to the shore. The logical inference from this testimony is that the efforts to move the Hagan from the wharf were unsuccessful, not because the Hagan was aground, but because she was securely moored to the shore by the stern line. No conclusion can be drawn from the fact that the towing line parted other than that it was the weaker line of the two.

While there was evidence of later inspection of the hull showing damage through scraping or resting upon some hard substance, that evidence has little weight in establishing grounding, for in our judgment the testimony is convincing that whatever deposit there was in the channel alongside the wharf consisted of slime and mud, which could not have caused the damage to the hull. We think the evidence that the Hagan had been aground at a foreign port upon a prior voyage and that, after being repaired, she had returned on other voyages to the same port, was sufficient to account for the scraping of the hull. The weight of the evidence being against the contentions of the Hagan Steamship Company charging fault to the Gulf Refining Company in not providing a safe berth, we find no error in the decree of the court below.

Decree affirmed.